# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| RICKY LEE DAVIS, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) | Civil Action No. 7:16-cv-394 |

## MEMORANDUM OPINION

Plaintiff Ricky Lee Davis ("Davis") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Davis alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the opinion evidence, including opinions of Davis's treating physicians, the independent medical expert, and the state agency doctors. I conclude that the ALJ failed to explain the reasoning for the weights assigned to the physician opinions in the record. Consequently, I **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 20), **GRANT in part** Davis's Motion for Summary Judgment (Dkt. No. 16) and **REVERSE** and **REMAND** this matter for further administrative consideration consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Davis failed to demonstrate that he was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Davis filed for SSI and DIB on June 22, 2012, claiming that his disability began on June 30, 2008, due to deteriorating discs in his back and a tumor in his left lung. R. 273, 277, 281, 321. Davis later amended his alleged onset date to March 22, 2012. R. 28. Davis's date last insured was March 31, 2013; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 29, 317; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Davis's applications at the initial and reconsideration levels of administrative review.[2] R. 108–16, 117–25, 128–35, 136–43. On June 23, 2014, ALJ Robert S. Habermann held a hearing to consider Davis's claims for SSI and DIB. R. 56–85. Following the June 2014 hearing, the ALJ reviewed additional records submitted by Davis's attorney, obtained a consultative psychological evaluation and a records review, and then held a second hearing on March 9, 2015. R. 28, 43–55. Counsel represented Davis at both the June 2014 and March 2015 hearings, which included

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Davis was awarded SSI benefits as of August 2016 on a separate claim. Pl.'s Mem. in Supp. of Summ. J. n. 4, Dkt. No. 17.

testimony from vocational experts Asheley Wells and Casey Vask. On March 23, 2015, the ALJ entered his decision analyzing Davis's claims under the familiar five-step process[3] and denying his claim for benefits. R. 28–37. The ALJ found that Davis was insured at the time of the disability onset and that he suffered from the severe impairments of chronic lumbar myofascitis and lumbar degenerative disc disease. R. 31. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 31. The ALJ specifically considered Listing 1.02 and 1.04. Id.

The ALJ concluded that Davis retained the residual functional capacity ("RFC") to perform a limited range of medium work. R. 33. Specifically, the ALJ found that Davis can lift or carry up to 20 pounds continuously and up to 50 pounds occasionally, and can sit for 8 hours and stand and walk for 6 hours in an 8-hour workday. Id. The ALJ further found Davis can continuously balance, operate foot controls and perform manipulative operations, can occasionally crawl, crouch, kneel, stoop, climb ladders or scaffolds, and be exposed to temperature extremes and humidity or wetness, can frequently climb stairs and ramps, and should never be exposed to vibrations. Id.

The ALJ determined that Davis was unable to perform his past relevant work as a motor vehicle assembler, painter helper, and floor maintenance worker, but that he could perform jobs that exist in significant numbers in the national economy, such as kitchen worker, laundry

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

worker, and food service worker. R. 36–37. Thus, the ALJ concluded that Davis was not disabled. R. 37. Davis appealed the ALJ's decision and the Appeals Council denied his request for review on August 3, 2015. R. 1–4.

## **ANALYSIS**

Davis alleges that the ALJ failed to properly evaluate and explain the weight he gave to the contradictory opinion evidence in the record of Davis's treating physician, two consultative physicians and a state agency physician.[4] Davis has a history of low back pain, stemming from back injuries in the 1980s and 1990s. R. 577–78. On March 22, 2012, Davis underwent an MRI of his lumbar spine, which showed stable spondylosis and disc disease including foraminal stenosis at L4/5 and L5/S1, a central protrusion at L5/S1 with left central annular fissure, and a chronic L1 compression fracture. R. 643. Davis sought treatment for his low back pain at the Veterans Administration Medical Center ("VAMC"), which included pain medication and epidural steroid injections. R. 575, 579, 660.

The ALJ reviewed and weighed multiple opinions from medical providers when assessing Davis's RFC. On September 10, 2012, state agency physician Joseph Duckwall, M.D., reviewed Davis's records and determined that he could perform a range of medium work, including lifting/carrying 50 pounds occasionally and 25 pounds frequently; standing/walking 6 hours in an 8 hour day; sitting for 6 hours in an 8 hour workday; occasionally climbing ladders, ropes and scaffolds, and frequently performing all other postural functions. R. 112–14. The ALJ gave "great" weight to the opinion of Dr. Duckwall that Davis can perform medium work; however, the ALJ provided no explanation for his assignment of weight, aside from stating that

---

[4] Davis's claims on appeal focus on his physical limitations; thus, I will not discuss the ALJ's findings with regard to Davis's mental limitations in this opinion.

4

Dr. Duckwall noted the findings of Davis's March 2012 MRI and that Davis was treated with lumbar injections and nerve blocks. R. 34.

On June 20, 2014, Robert Stephenson, M.D., performed a consultative examination of Davis. R. 807–10. Davis reported constant low back aching pain, with intermittent sharp pain depending upon activity and positioning. R. 807. He noted increased pain in the low back with prolonged sitting or walking or heavy lifting. Id. Davis denied radicular pain or numbness and weakness in his lower extremities, and denied pain or problems with his neck and upper extremities Id. Upon examination, Davis had a normal gait and full range of motion in his upper extremities and neck. He had a localized muscle spasm in his right lumbar paraspinal muscles with muscle tightness of the left lumbar paraspinal muscles. R. 808. He had limited range of motion of the thoracolumbar and lumbar spine due to pain. Id. Davis had full range of motion of all joints of his lower extremities, and negative straight leg raising. R. 808–809. Dr. Stephenson's impression was chronic low back pain related to underlying lumbar degenerative arthritis with degenerative disc disease throughout. Dr. Stephenson expected Davis's underlying lumbar degenerative arthritis with foraminal stenosis and annular fissuring to gradually worsen over time, and gave him a "fair-poor" prognosis for significant improvement in the future. R. 809.

Dr. Stephenson determined that Davis could stand/walk for 4 hours in an 8 hour workday; sit for 4 hours in an 8 hour workday; lift/carry 10 pounds frequently and 25 pounds occasionally; occasionally bend, stoop, crouch; and should avoid cold or damp environments and unprotected heights. Id. Dr. Stephenson recommended low back exercises, cessation of smoking, and continued care with his treating physicians. R. 810.

The ALJ gave Dr. Stephenson's opinion "little" weight, noting that he performed a one-time exam of Davis, at the request of his attorney. R. 34. The ALJ stated, "[t]reating progress notes and objective findings do not support Dr. Stephenson's restrictions for the claimant. For his pain complaints, the claimant receives only conservative treatment. His physical exams are essentially normal. The claimant testified that he takes no pain medications." R. 34.

In August 2014, Louis Fuchs, M.D., an orthopedic surgeon, reviewed Davis's medical records and completed a medical interrogatory related to Davis's limitations. R. 813–22. Dr. Fuchs determined that Davis had chronic lumbar myofascitis and degenerative lumbar disc disease. R. 814. Dr. Fuchs concluded that Davis could lift/carry 20 pounds frequently and 50 pounds occasionally; sit/stand and walk for 3 hours at one time in an 8 hour workday; can stand/walk for up to 6 hours in an 8 hour workday; occasionally crawl, crouch, kneel, stoop and climb ladders and scaffolds; and frequently climb ramps and stairs. R. 819–20. He further found that Davis should have occasional exposure to humidity, wetness, extreme heat and cold, and no exposure to vibrations. R. 821. The ALJ gave Dr. Fuchs' interrogatory "great" weight, noting only that "the physical restrictions in the residual functional capacity herein are consistent with Dr. Fuchs' restrictions." R. 34. The ALJ provided no reasoning for the weight given to Dr. Fuchs' opinion.

On November 21, 2014, Davis was treated by physician's assistant Christopher Lentz at the VAMC and reported daily chronic pain. R. 861–2. Upon examination, Davis had negative straight leg raises and no palpable back pain. Id. Mr. Lentz assessed chronic low back pain and prescribed an anticonvulsant. R. 861–62.

On March 4, 2015, Lentz completed a medical source statement, concluding that Davis could sit, stand and walk for 2 hours in an 8 hour workday; and occasionally lift 20 pounds and

6

frequently lift 10 pounds. R. 838. Lentz found that Davis's pain and symptoms would interfere with his attention and concentration, that he would have good and bad days, and that he is likely to miss work due to his impairments about four times a month. R. 839. Lentz wrote, "Mr. Davis had a wedge compression fracture of L1 and lumbar spondylosis with foraminal narrowing at L4/L5 and L5/S1, based on MRI 3/22/12." R. 839. The ALJ "rejected" Lentz's medical source statement, stating that Lentz's opinions are "unreasoned and undocumented." R. 35. The ALJ further stated that "[o]bjective and clinical findings, Dr. Fuchs' and Dr. Duckwall's assessments and Mr. Lentz's progress notes for the claimant do not support Mr. Lentz's restriction for the claimant." Id.

Davis asserts that the ALJ erred by providing no explanation for why he gave "great" weight to the opinions of Dr. Fuchs and Dr. Duckwall, while giving "little" weight to the opinions of Dr. Stephenson and Mr. Lentz. Davis asserts that the ALJ's analysis of the physicians' opinions fails to consider the factors required under the regulations and lacks a meaningful discussion as to reasons for the weights assigned.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[5] 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920(c)(a). However, the claim in the present case was filed before March 27, 2017, and the court has therefore analyzed Davis' claims pursuant to the treating physician rule set out above.

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

In a recent decision, the Fourth Circuit held that the ALJ erred by affording controlling weight to the opinion of a non-treating, non-examining physician over the claimant's treating physicians. Brown v. Comm'r, 873 F.3d 251, 268 (4th Cir. 2017). The Court determined that in addition to "flouting the treating physician rule," the ALJ's reliance on the non-treating physician's opinion was not justified by any 20 C.F.R. § 404.1527(c) factors that would warrant crediting the opinion of a non-treating source. Id.

The regulations also require that the opinion of a consultative examining source should generally receive greater weight than a non-examining source. 20 CFR §§ 404.1527(c)(1), 404.1527(c)(2); Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sep. 4, 2014). In evaluating the weight to give the opinion of a consulting examiner, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

8

Here, the ALJ gave the greatest weight to the opinions of two physicians who did not examine or treat Davis, and gave little or no weight to the opinions of the examining and treating physicians. That ALJ provided no explanation for the weight assigned to the opinions of the non-examining physicians, Dr. Fuchs and Dr. Duckwall, beyond simply restating their conclusions. R. 34. Further, although the ALJ incorporated the majority of Dr. Fuchs's opinion into the RFC, he made no mention of Dr. Fuchs's conclusion that Davis should not sit/stand/walk more than 3 hours at a time.[6] The ALJ also provided no explanation as to why he gave the opinions of both Dr. Duckwall and Dr. Fuchs great weight, but adopted Dr. Fuchs's opinion for the RFC, rather than Dr. Duckwall's. See Bishop v. Colvin, No. 7:15cv92, 2016 WL 4132326 at *5 (W.D. Va. Aug. 3, 2016) ("The ALJ cannot, without at least some explanation, give both opinions the same weight and then arbitrarily adopt the conclusions of one over the other.").

With regard to Dr. Stephenson's opinion, the ALJ noted that he performed a "one-time" examination, and that "treating progress notes and objective findings do not support Dr. Stephenson's restrictions for the claimant." R. 34. The ALJ did not cite to any specific treatment notes or objective findings. The ALJ also stated that Davis receives "only conservative treatment," his physical exams are "essentially normal," and he takes no pain medications. R. 34. These types of general statements, without explanation, are insufficient to support an RFC determination. See Lewis v. Colvin, 2013 WL 6839505, at *5 (An ALJ's conclusion that a physician's opinion "is not entirely consistent with the medical evidence as a whole," without more, is insufficient to support his RFC findings); Pearson v. Colvin, No. 4:12CV23-FL, 2013 WL 3243550, at *4 (E.D.N.C. June 26, 2013) (An ALJ's conclusion that an opinion was "out of

---

[6] The Commissioner asserts that it was unnecessary for the ALJ to discuss Dr. Fuchs's finding that Davis cannot sit/stand/walk for more than three hours at a time because there are customary breaks during a workday at two hour intervals. Dkt. No. 21 at 16.

9

proportion to the longitudinal and objective record" is merely conclusory and lacks any meaningful factual comparisons.)

The ALJ provided a more fulsome explanation for "rejecting" the only opinion of a treating provider in the record, Mr. Lentz. R. 35. The ALJ found Lentz's opinions "unreasoned and undocumented," unsupported by objective and clinical findings, and unsupported by the assessments of Dr. Fuchs and Dr. Duckwall, and Lentz's progress notes. Id. The ALJ cited specific medical evidence to support his conclusions with regard to Lentz's opinion, noting that Lentz treated Davis beginning in July 2014 at about 3 month intervals; that Davis was not prescribed narcotics; that Davis's straight leg raise was negative and he had no palpable back pain. R. 35.

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe, 826 F.3d at 190–91. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637). Here, the ALJ's failure to explain the weight given to the four medical opinions in the record—which present contradictory assessments—and sufficiently express how or why he arrived at his conclusions prevents the court from conducting a meaningful review.

Davis also asserts that the ALJ erred by referring to non-existent MRI scans in 2014 and 2015 in his decision. The record before the ALJ contained only a 2012 MRI scan, which was reprinted on March 6, 2015. R. 837. Davis asserts that the ALJ's misunderstanding that he had multiple MRI scans which remained unchanged from 2012 through 2015 impacted the ALJ's analysis of the objective evidence in the record and the weight he gave to the various physicians' opinions in the record. Dkt. No. 17 at 7.

Indeed, the ALJ's decision states: "[o]n March 6, 2015, the claimant's lumbar MRI showed essentially stable spondylosis and disc disease including foraminal stenosis at L4-5 and

11

L5-S1, a central protrusion, and a chronic L1 compression fracture." R. 33. After reviewing

Davis's medical evidence and hearing testimony, the ALJ stated:

> Objective and clinical findings do not fully support the claimant's allegations on the severity of his functional limitations. As discussed previously, the claimant's physical exams are essentially normal. His 2012, 2014 and 2015 lumbar MRI scans showed essentially stable spondylosis and disc disease and an old compression fracture.

R. 34.

Davis asserts that the ALJ's mistaken interpretation of the objective evidence is a material error that warrants remand. Dkt. No. 17 at 7. The Commissioner asserts that the ALJ's error was minimal and in no way suggests that the ALJ had a misunderstanding of Davis's lumbar spine impairment. Dkt. No. 21 at 13. It is difficult to say what impact, if any, the ALJ's mistaken interpretation of the objective MRI findings had on his conclusions regarding Davis's RFC. Certainly, the ALJ misstated the objective findings in the record, and then referred to those objective findings when weighing the physicians' opinions and the credibility of Davis's testimony. R. 34, 35.

Given the ALJ's failure to fully and adequately explain the weight given to the physician opinions in the record, and his misinterpretation of the objective evidence, I cannot find that the ALJ's decision is supported by substantial evidence. The ALJ may be correct in his analysis of the opinion evidence and his finding that Davis is capable of performing medium work, but he needs to provide additional explanation to support that determination. "The ALJ is obligated to both identify specific evidence from the medical opinions that he found inconsistent with the medical evidence as a whole, and also to explain 'the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim.'" Lewis v. Colvin, No. CBD–11–

1423, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013) (citing King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980)).

## **CONCLUSION**

For the foregoing reasons, I **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 20), **GRANT in part** Davis's motion for summary judgment (Dkt. No. 16), and **REVERSE** and **REMAND** this case to the Commissioner under sentence four of 42 USC § 405(g).

Entered:  March 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge